In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1991

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NORVELL MOORE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cr-00896-1 — **Charles P. Kocoras**, *Judge.*

SUBMITTED DECEMBER 7, 2016[*] — DECIDED MARCH 15, 2017

---

[*] Pursuant to Seventh Circuit Internal Operating Procedure 6(b), this appeal has been submitted to the same panel of judges that decided Moore's previous two appeals. *See United States v. Moore*, 763 F.3d 900 (7th Cir. 2014) (Appeal No. 13-2905); *United States v. Moore*, 617 F. App'x 562 (7th Cir. 2015) (per curiam) (non-precedential decision) (Appeal No. 15-1272). After examining the briefs and the record, we have unanimously concluded that oral argument is unnecessary to the resolution of the instant appeal. The appeal is therefore submitted on the briefs and the record. *See* FED. R. APP.

(continued...)

Before POSNER, FLAUM, and ROVNER, Circuit Judges.

ROVNER, *Circuit Judge.*  Norvell Moore is before us for the third time, challenging the sentence he received following a re-trial on two of the three offenses with which he was charged in connection with a 2010 carjacking. He was acquitted of both of those offenses, and then re-sentenced on a felon-in-possession conviction (*see* 18 U.S.C. § 922(g)(1)) that we affirmed in a prior appeal. *See United States v. Moore*, 763 F.3d 900, 914 (7th Cir. 2014) ("*Moore I*"). Unhappily for Moore, the district judge imposed the same sentence—240 months—that he had been given after the first trial, when he was convicted of both the felon-in-possession charge and a second weapons charge. Moore contends that the sentence is flawed for two reasons. First, he argues that because he was originally sentenced to a term of 120 months on the felon-in-possession conviction (to be served consecutively with an identical term on the companion firearm conviction), the district judge was obliged to impose the same term on that charge when he was re-sentenced. Second, although it is now clear that, as an armed career criminal, he was and is subject to a minimum term of 180 months on the felon-in-possession charge, the government waived any reliance on that enhanced minimum term by not pursuing it when he was originally sentenced. Beyond these two arguments, Moore pursues no challenge to the substantive reasonableness of the sentence imposed. We find neither of the

[*] (...continued)
P. 34(a)(2)(C).

arguments he does make to be meritorious and affirm the sentence.

## I.

In 2010, Norvell Moore stole a BMW sedan from its driver after showing her that he was armed with a gun. He was captured by Chicago police after a high-speed chase during which he crashed the BMW into another vehicle. A federal grand jury charged him with carjacking, in violation of 18 U.S.C. § 2119; using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm following a felony conviction, in violation of section 922(g)(1).

Moore was first tried on these charges in 2013 before Judge Grady, but the jury was unable to reach a verdict on the carjacking charge. When jurors, at the conclusion of their first day of deliberations, informed the judge that they were not making progress and asked to be released for the day, Judge Grady asked them whether they had reached agreement as to any of the charges. When they responded that they had, the judge solicited a partial verdict and the jury returned verdicts of guilt on both the using-or-carrying charge and the felon-in-possession charge. Deliberations thereafter continued on the carjacking charge, but the jury was never able to achieve unanimity and the court ultimately declared a mistrial on that charge and, on the government's motion, dismissed it without prejudice.

When he sentenced Moore on the using-and-carrying and felon-in-possession charges, Judge Grady concluded that a total sentence of 240 months was a reasonable sentence. The advisory range under the Sentencing Guidelines was 360 months to life. Judge Grady thought that a sentence of 360 months was exces-

sive. Nonetheless, he believed a substantial sentence was warranted in light of Moore's criminal history. Moore had three prior convictions for robbery, among other offenses. In 2002, Moore and an accomplice had forced their way into a Burger King restaurant, where they assaulted an employee (who sustained injuries requiring medical attention) and compelled him to open a safe; the two made off with $5,000. R. 123 at 9 ¶ 41. In 2004, Moore and two other individuals had robbed two female victims at gunpoint. R. 123 at 10 ¶ 43. And in 2007, Moore had pushed a female victim against a fence and snatched her purse. He subsequently resisted arrest and twice struck an arresting officer in the face. A handgun was recovered from his vehicle. R. 123 at 10 ¶ 44. Compounding the gravity of Moore's criminal history was the fact that despite the prison terms (ranging from three to eight years) to which he was sentenced for these crimes, he had continued to re-offend; indeed, Moore had committed the car theft at issue in this case shortly after being paroled on the last of these prior robbery convictions and while still wearing an electronic monitoring bracelet on his ankle. "This isn't really a matter of punishment," Judge Grady observed. R. 156 at 38. "It's a matter of protecting the public from this defendant, who is a person who simply does not respect the law." R. 156 at 38. After hearing from the victim and Moore's sister and weighing the sentencing factors set forth in 18 U.S.C. § 3553, the judge concluded that a below-Guidelines sentence of 20 years, or 240 months, was sufficiently lengthy "to promote the objectives of specific and general deterrence and avoidance of inappropriate and unjustified sentencing disparities." R. 156 at 66. "Twenty years is a long time. It will give the defendant a long time to think about his attitude toward the rights of others … ." R. 156 at 66.

When asked by the probation officer how the 240-month sentence should be allocated between the two convictions, Judge Grady ordered Moore to serve consecutive terms of 120 months on each. We should point out here that the parties and the court were laboring under the mistaken assumption that the statutory range of possible punishments on the felon-in-possession conviction was zero to 120 months. *See* R. 123 at 17 ¶ 82; R. 156 at 67–68. In fact, as we discuss below, Moore's criminal history of multiple convictions for armed robbery triggered an increase in the statutory sentencing range on that conviction: Moore was subject to a statutory minimum term of 180 months (15 years) and a maximum term of life. *See* 18 U.S.C. § 924(e)(1). The increased range remained overlooked until Moore was re-sentenced following a second trial on the carjacking and using-and-carrying charges.

The re-trial was the result of a remand we ordered in Moore's first appeal. In that 2014 decision, we affirmed Moore's conviction on the felon-in-possession charge but vacated his conviction on the using-or carrying charge. *Moore I*, 763 F.3d 900. Our decision to vacate the latter conviction was animated by a concern that the district judge had prematurely solicited a partial verdict from the jury when it had not yet declared that it was at an impasse as to the underlying crime of violence (carjacking) in relation to which Moore had allegedly used or carried a firearm. 763 F.3d at 912–14. We remanded the case to the district court for further proceedings consistent with our opinion. *Id.* at 914.

On remand, the case was reassigned from Judge Grady (who had retired) to Judge Kocoras, and a grand jury issued a superseding indictment re-asserting the carjacking charge

(which, as we have mentioned, had been dismissed without prejudice following the jury's inability to reach a verdict at the first trial) and the using-or-carrying charge, the conviction which we had vacated. Moore moved to dismiss the superseding indictment on double jeopardy grounds, but Judge Kocoras denied that motion, and we sustained his decision in a second appeal. *United States v. Moore*, 617 F. App'x 562 (7th Cir. 2015) (per curiam) (non-precedential decision) ("*Moore II*").

Moore was re-tried on both charges in 2015, and the jury acquitted him. Given the veil of secrecy that enshrouds jury deliberations, we cannot be sure why the jury decided to acquit Moore on these charges. What we can note is that one element of the carjacking charge was that Moore intended to cause serious bodily harm or death if the victim did not surrender the automobile to him. § 2119; *see Holloway v. United States*, 526 U.S. 1, 11–12, 119 S. Ct. 966, 972 (1999). This was a point that the defense vigorously contested. When he took the witness stand at the second trial, Moore testified that he had gone hunting for a car to steal and that he brought a loaded handgun with him in order to discourage resistance from his victim; he also conceded that he showed the gun to his victim in order to intimidate her. R. 276 at 42, 44, 53, 67, 74–75, 84. But he denied harboring any intent to kill or harm the victim in the event she did not cooperate. R. 276 at 40, 74, 86. And Moore specifically disputed the victim's testimony that he had pointed the gun at her head and threatened to kill her if she did not get out of the BMW. R. 276 at 45, 68–69, 71, 72. He told the jury he had simply shown the victim the gun and asked her to exit the car, which she eventually did. R. 276 at 41, 42, 84. Defense counsel in turn questioned the victim's credibility on this point and

contended that the government had not proved, beyond a reasonable doubt, that Moore had intended to harm the victim. R. 277 at 12–18, 23–28. And if the government had not succeeded in proving that Moore was guilty of carjacking, counsel argued, neither had it proved that Moore was guilty of using or carrying a firearm during and in relation to the offense of carjacking. R. 277 at 29. Doubt about Moore's intent to harm the victim may explain the jury's decision to acquit him of both charges.

Following the acquittals, it remained for Judge Kocoras to re-sentence Moore on the felon-in-possession conviction that we had affirmed in *Moore I*. For that purpose, the court directed the probation officer to prepare a supplemental presentence report ("PSR"). In connection with that PSR, the government submitted a supplemental version of the offense in which it asserted, for the first time, that Moore's three prior robbery convictions, because they were convictions for a violent crime, rendered him subject to a minimum prison term of 15 years and a maximum term of life on the felon-in-possession charge, pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). R. 252 at 12-13. The probation officer agreed, and the PSR reflected that Moore was subject to an enhanced statutory term of imprisonment. R. 252 at 3. As calculated by the probation officer, the advisory Sentencing Guidelines imprisonment range on the felon-in-possession conviction was 262 to 327 months. R. 252 at 3.

Moore objected to the supplemental PSR and argued that the district court was obligated to impose the same sentence on the felon-in-possession charge that Judge Grady had imposed after the first trial. As we have noted, Judge Grady had

ordered Moore to serve a total prison term of 240 months, with 120 months of that total to be served (consecutively) on the felon-in-possession charge. R. 145 at 2; R. 156 at 66, 67–68. In Moore's view, because we had affirmed his conviction on that charge in *Moore I* and he had now been acquitted of the other charges, there was nothing for Judge Kocoras to do but re-sentence him to the same 120-month term that Judge Grady had imposed in the first instance. He contended that he was not subject to the 15-year minimum term specified by the ACCA because (1) his three prior robbery convictions did not qualify as "violent felonies" triggering the ACCA enhancement, because simple robbery, as defined by Illinois law, does not categorically involve the use of physical force, *see Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143 (1990); and (2) the government had waived any reliance on the ACCA by not raising it at his original sentencing.

Judge Kocoras rejected Moore's position in both respects. The judge concluded that he had authority to re-sentence Moore de novo. Given that Moore's original sentence was based on his conviction on two charges, our decision to vacate Moore's conviction on one of those two charges unbundled that sentence and opened the door to a new sentence based on the record before the court at the time of re-sentencing. R. 273 at 12, 15. Judge Kocoras went on to find that Moore's three robbery convictions constituted crimes of violence and thus triggered the 15-year minimum specified by the ACCA. R. 273 at 13, 15. He was not convinced that the government had waived its argument as to the minimum, and because it was a statutory minimum term, he was not free to overlook it. R. 273 at 13–14.

After adopting the Guidelines calculations set forth in the PSR (R. 273 at 15; R. 274 at 17–18), Judge Kocoras found that a below-Guidelines sentence of 240 months—the same sentence that Judge Grady had imposed—was a reasonable sentence (R. 274 at 38-40). He was inclined to accept Moore's profession of genuine remorse for his conduct in this case. R. 274 at 33, 34, 35. But like Judge Grady, Judge Kocoras was struck not only by the serious nature of Moore's prior offenses but the failure of his prior punishments to cease his pattern of criminal conduct:

> It is the conduct that he has engaged in repeat-edly—not once, not twice, not three times, but now four times—and it is the conduct where we start the analysis of what is appropriate [i]n a particular case; and, as the Presentence Report points out, what he has learned with punishment.
>
> He went from sentences of two years, to three years, to seven years, to eight years, and none of that deterred him. Not a day in jail, from what I can tell.
>
> And it is reflect[ed] in his conduct in this case. As I remember his testimony—and, I think, fairly accu-rately so—he woke up that morning having in mind … he was going to get himself a car at whatever cost it was going to take. And he saw this nice black BMW and he said, "That's the one."
>
> And he brought a gun with him, to make sure he was going to do it and get away with it. And it is [for] that conduct that we are here to decide what [sentence] is appropriate, aside from the effect on the victim.

R. 274 at 33–34. The court deemed it "an imponderable question" whether Moore would have used the (loaded) gun to harm his victim had she not surrendered her car to him, but noted that he had otherwise "admitted to practically everything the jury acquitted him of." R 274 at 36. Ultimately, the judge was convinced, in light of Moore's recidivism, that a serious sentence was called for. "He has got a very, very bad record. He has never … assumed a change in his lifestyle." R. 274 at 38. Acknowledging his obligation to "rethink" the sentence, Judge Kocoras came to the conclusion that a below-Guidelines sentence of 240 months—the same sentence Judge Grady had imposed—was severe enough to account for the gravity of Moore's offense and criminal history. R. 274 at 38–39. The Judge emphasized that he arrived at that conclusion independently rather than by "rote" or by simply deferring to Judge Grady's judgment. R. 274 at 39.

## II.

On appeal, Moore pursues two of the arguments that he made unsuccessfully below: (1) that on remand, Judge Kocoras was bound to re-sentence him to the same 120-month sentence originally imposed on the felon-in-possession conviction ; and (2) that the government waived any reliance on the 15-year minimum specified by the ACCA. Neither argument is persuasive.

Our decision in *Moore I* did not preclude Judge Kocoras from re-sentencing Moore de novo on the felon-in-possession conviction. In contrast to *United States v. Tello*, 687 F.3d 785, 798–800 (7th Cir. 2012), on which Moore relies, we did not remand the case for the limited purpose of correcting a discrete

sentencing error; rather, we remanded generally for any and all further proceedings consistent with our opinion (which included, as occurred, a second trial), and we did so upon vacating one of the two convictions that formed the basis for Moore's original sentence. Although we affirmed Moore's felon-in-possession conviction, the 120-month term imposed on that conviction by Judge Grady after the first trial was not a stand-alone sentence, but rather part of a sentencing package. As such, the 120-month term was to be served consecutively with the identical term imposed on the using-or-carrying charge, for a total term of 240 months. When we vacated Moore's conviction on the using-and-carrying charge, we unbundled the sentencing package and left the door open to a new sentence on the felon-in-possession charge—in conjunction with any other charge on which Moore might have been convicted after a second trial. *See United States v. Shue*, 825 F.2d 1111, 1113–14 (7th Cir. 1987); *see also United States v. Soy*, 413 F.3d 594, 606–08 (7th Cir. 2005); *United States v. Binford*, 108 F.3d 723, 728–30 (7th Cir. 1997); *United States v. Smith*, 103 F.3d 531, 533–35 (7th Cir. 1996). In the wake of the acquittals at the second trial, Judge Kocoras was presented with a conviction record distinct from the one that had confronted Judge Grady (a conviction on one charge rather than two), but his task was the same: to determine an appropriate sentence taking into account the full extent of Moore's underlying conduct in conjunction with his criminal history. His discretion in arriving at that sentence was not cabined by the term that Judge Grady imposed on just one of the two counts of which Moore was originally convicted.

The landscape at re-sentencing was also altered by the belated realization that Moore was subject to the 15-year minimum specified by the ACCA for the felon-in-possession charge in view of his three prior robbery convictions. Indeed, the ACCA enhancement altered not only the statutory minimum term but also the maximum term—from 10 years to life. *Compare* § 924(a)(2) with § 924(e)(1). So the sentence Judge Grady had imposed (mistakenly assuming it was the maximum possible term) was actually five years shy of the minimum term mandated by statute and nowhere near the maximum term. At this juncture, there is no dispute that the ACCA, by its terms, applies to Moore; he has abandoned his argument that his three prior robbery convictions do not constitute violent felonies triggering the enhanced minimum and maximum terms.

The ACCA is a statutory command, so as Judge Kocoras recognized, he was not free to disregard the 15-year minimum regardless of whether the government (and for that matter, everyone else) overlooked it at the first sentencing. For what it is worth, Moore points us to no evidence that the government intentionally ignored the ACCA when Moore was first sentenced, so we certainly can see no abuse of discretion in the determination that the government was not precluded from invoking the statute at the second sentencing. More to the point, though, we can discern no basis for holding that the court itself was precluded from complying with the ACCA at the second sentencing. *See United States v. Cobia*, 41 F.3d 1473, 1475–76 (11th Cir. 1995) (per curiam) (given mandatory nature of section 924(e), the increase in the minimum prison term should be applied automatically regardless of whether govern-

ment has affirmatively sought that enhancement) (collecting cases); *cf. United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016) (defendant cannot waive his right to be sentenced within statutory limits); *Smith*, 103 F.3d at 535 ("It would be silly, we think, to say that a judge, noting an incorrect base offense level in an original sentence in a situation like this, is powerless to correct the error.").

Based on the record presented to him, Judge Kocoras determined that a sentence of 240 months was a reasonable and appropriate sentence to impose on the felon-in-possession conviction, and we are given no cause to question the propriety of that sentence. Apart from the two challenges discussed above, Moore has not cited, nor have we independently identified, any procedural error in the sentencing: there was no apparent error in the determination of the statutory or Guidelines sentencing ranges, for example; the judge did not treat the Guidelines range as binding; and the record indicates that the judge complied with his obligation to consider the sentencing factors set forth in § 3553(a) and to state the reasons for his choice of sentence. *See United States v. Miller*, 829 F.3d 519, 527 (7th Cir. 2016), *pet'n for cert. filed*, No. 16-6925 (U.S. Nov. 11, 2016); *United States v. Hurt*, 574 F.3d 439, 442 (7th Cir. 2009). Nor, as we noted at the outset, has Moore questioned the substantive reasonableness of the sentence imposed. Our review, when presented with such a challenge, is one for abuse of discretion. *E.g.*, *Miller*, 829 F.3d at 527. We presume that a within-Guidelines sentence is reasonable, *see Rita v. United States*, 551 U.S. 338, 347–56, 127 S. Ct. 2456, 2462–68 (2007); *e.g.*, *United States v. Maxwell*, 812 F.3d 1127, 1130 (7th Cir. 2016) (per curiam), and the same presumption obviously extends to a

below-Guidelines sentence like the one imposed here, *e.g.*, *United States v. Miller*, 834 F.3d 737, 744 (7th Cir. 2016); *United States v. Nania*, 724 F.3d 824, 839 (7th Cir. 2013). As the appellant, Moore bears the burden of rebutting that presumption by showing that the sentence is unreasonably high in light of the section 3553(a) factors. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). That is a particularly onerous burden when the sentence falls below the advisory Guidelines range. *See United States v. Trudeau*, 812 F.3d 578, 594 (7th Cir. 2016) ("A below-guidelines sentence will almost never be unreasonable[.]") (citing *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008)), *cert. denied*, 137 S. Ct. 566 (2016); *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005) ("It is hard to conceive of below-range sentences that would be unreasonably high."); *Miller*, 829 F.3d at 527. Apart from the noteworthy fact that Moore has not attempted to make such a showing, we note that the 240-month term was nearly two years below the low end of the Guidelines range; this was Moore's fourth conviction arising from the use of force to take property from a victim; the theft of the BMW was apparently part of an ongoing series of auto thefts (Moore testified that he had previously stolen a truckload of Audis); and even if we credit Moore's testimony and assume that he did no more than show the gun to the victim, by his own account he used the gun to intimidate the victim. Judge Kocoras reasonably concluded, in view of Moore's recidivism, that a substantial sentence was warranted both to account for the serious nature of his offense and to deter Moore from committing additional crimes. Would a lesser sentence have sufficed to achieve these ends? That may be open to debate. But our role is not to second-guess the

sentencing judge but rather solely to assess whether he abused his discretion in passing sentence. Judge Kocoras, like Judge Grady, is one of the most experienced district judges in our circuit. We simply cannot say that he abused his discretion in selecting the term of imprisonment that he did.

### III.

Finding no error in the sentence imposed on Moore, we AFFIRM the judgment.

POSNER, *Circuit Judge*, dissenting. In his first trial, which was before Judge Grady, Moore, the defendant in this extended litigation—he was indicted a few months short of seven years ago—was convicted of being a felon in possession of a gun, 18 U.S.C. § 922(g)(1), and also (though not, as it turns out, properly) convicted of using or carrying a firearm during and in relation to a crime of violence. 18 U.S.C. § 924(c)(1)(A). He was also charged with, but not convicted of, carjacking. 18 U.S.C. § 2119. Judge Grady sentenced Moore to two successive prison terms, one for each crime of which the defendant had been convicted—felon in possession and using or carrying a firearm—with each term to run 120 months, making a total sentence of 240 months. The defendant appealed, and we reversed and remanded the using or carrying charge. *United States v. Moore*, 763 F.3d 900, 902 (7th Cir. 2014). By then, Judge Grady had retired, and the case was reassigned to Judge Kocoras to take charge of on the remand.

On remand the jury acquitted Moore of the using or carrying charge, and again of the carjacking charge). He had then to be resentenced on the felon in possession charge.

With the using or carrying charge out of the case, one might have expected Judge Kocoras to have resentenced the defendant to 120 months (=10 years) for being a felon in possession, and stopped there. But the prosecutors wanted more, and for the first time argued that the defendant, having had three robbery convictions before his conviction for being a felon in possession, was subject to a minimum sentence of 15 years on the felon in possession charge. 18 U.S.C. § 924(e)(1). The judge's response was to sentence the defendant, on the felon in possession count (the only remain-

ing count, remember), to 240 months in prison—20 years, rather than the 15-year minimum (the statutory maximum is life).

I find that unacceptable. Judge Grady had thought that 120 months of prison for being a felon in possession was the proper sentence for this defendant. The government had not expressed disagreement. In the trial before Judge Grady it had not brought up the robberies as a reason that Moore could or should be sentenced to more than 120 months on the felon in possession charge. A further problem with the government's reliance on the robberies to push up the defendant's sentence was that he'd been punished for those robberies—on what principle was he to be repunished for them? A defendant's criminal history can of course be a relevant consideration at sentencing, but if these robbery convictions were really so important a factor in deciding on a proper sentence for *this* defendant, why hadn't the government noticed them before?

If one assumes (as I do not) that the 15-year statutory minimum sentence for felon in possession is applicable despite the government's belated invocation of it, that equates to 180 months, yet Judge Kocoras did not, so far as appears from the record, consider the alternative of a 180-month sentence. I also incline to the view that the government's failure to notice, until the last remand of this protracted litigation, that the defendant could be sentenced to 20 years in prison (or indeed to life in prison) because of his robberies, on the felon in possession charge alone, precluded the imposition of any sentence in excess of the 120-month term that Judge Grady had imposed without objection by the government. In the first appeal we affirmed the defendant's conviction for

being a felon in possession without ruling on the sentence the judge had imposed, *United States v. Moore*, *supra*, 763 F.3d at 914, and I would expect our affirmance to bind a district judge in subsequent proceedings. Moore's briefs argue persuasively, with case support—see, e.g., *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014); *United States v. Barnes*, 660 F.3d 1000, 1006 (7th Cir. 2011) (citing *United States v. Avila*, 634 F.3d 958, 961 (7th Cir. 2011))—that the scope of a remand is determined by the language in the appellate opinion ordering the remand; the language in our opinion did not envisage a doubling of the sentence based on the defendant's earlier felonies.

Although I am a friend and admirer of Judge Kocoras, I fear that in this case, being a latecomer to it and failing as it seems to appreciate the significance of our having affirmed the defendant's conviction for being a felon in possession, Judge Kocoras erred. I would reverse the defendant's sentence with directions to sentence him to 120 months, period.

I don't wish to minimize the gravity of the three robberies that the judge used to double the defendant's sentence, but neither should their gravity be exaggerated. Although two of the robberies involved assaults, the defendant received no prison time at all for the first robbery (though it included one of the assaults), committed when he was 20 (although he later received a three-year sentence for violating the term of probation that he had been given in lieu of prison), and he served only three years in prison (of an eight-year sentence, before being paroled) for the second robbery, committed when he was 21, and also three years (of a seven-year sentence, before being paroled) for the third, committed when he was 24. Evidently the state courts did

not consider the crimes serious enough to warrant long pris-on terms. He's now a few months short of 35. A 20-year sen-tence for a robber of that age is excessive, as such crimes are rarely committed by persons in their fifties. I find no recog-nition of this point either in the district judge's opinion or in my court's majority opinion. A 20-year sentence ought not lightly to be imposed, even on a robber.

Needless to say, there is no recognition in either the dis-trict court's sentencing statement or my colleagues' majority opinion of the need to curtail imprisonment of violent of-fenders, a need stressed in an excellent recent article by Fordham Law Professor John Pfaff, "A Better Approach to Violent Crime: If We're Going to End Mass Incarceration in the U.S., It Will Mean Figuring Out Better Ways to Prevent Violent Crimes and to Deal with Those Who Commit Them," *Wall Street Journal*, Jan. 27, 2017, www.wsj.com/articles/a-better-approach-to-violent-crime-1485536313, an article amplified in a recently published book by him enti-tled *Locked In: The True Causes of Mass Incarceration and How to Achieve Real Reform* (2017), and summarized by David Scharfenberg in a recent article—"Why We Should Free Vio-lent Criminals," *Boston Globe*, Feb. 5, 2017, www.bostonglobe.com/ideas/2017/02/05/why-should-free-violent-crim inals/HK8zo5OMtsMjhhQuXySuDM/story.html.

As Pfaff explains in his *Wall Street Journal* article, one of his concerns is the high discount rates of typical violent of-fenders, though he doesn't use the phrase "high discount rates" but instead says that "those contemplating crime often don't know how long sentences are, or even that sentences have gotten longer. More important, those who are most likely to engage in violence and antisocial behavior tend to

be very present-minded. They don't think a lot about tomorrow. What really deters them, if anything does, is the risk of getting caught in the first place: policing and arrests, not prison sentences."

Many violent offenders, moreover, age out of crime, often as early as their mid- to late-twenties—"by the time a person in his 30s has generated a long criminal history suggesting that he poses a continuing risk, he is likely to have started 'aging out' of crime, violent behavior in particular. ... A long prison sentence also undermines someone's ability to find the stabilizing influence of a job or a spouse, thus increasing the long-run risk that he will reoffend." Among other alternatives to prison for dealing with violent criminals, Pfaff mentions "hot-spot policing," which "identifies ... high-crime blocks and significantly increases patrols and community involvement there [and] has produced significant results."

Maybe we judges could learn something from these experts.